TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
KYLE W. KAHAN (Cal. Bar. No. 298848)
SUSAN S. HAR (Cal. Bar. No. 301924)
Assistant United States Attorneys
General Crimes Section
     1100/1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2400
     Facsimile: (213) 894-0141
     E-mail:    kyle.kahan@usdoj.gov
                susan.har@usdoj.gov


Attorneys for Plaintiff
UNITED STATES OF AMERICA

                UNITED STATES DISTRICT COURT

            FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 19-00302-FMO |
|---|---|
| Plaintiff, | GOVERNMENT'S TRIAL MEMORANDUM |
| v. | Trial Date:  July 1, 2021<br>Trial Time:  9:00 a.m. |
| CARLOS ALEXANDRE VIANA GROSSI, | Location:  Courtroom of the<br>Hon. Fernando M. |
| Defendant. | Olguin |

     Plaintiff United States of America, by and through its counsel
of record, the Acting United States Attorney for the Central District
of California and Assistant United States Attorneys Kyle W. Kahan and
Susan S. Har, hereby submits its Trial Memorandum in the above-
captioned case.

//

//

//

//

1    The government respectfully requests leave of the Court to
2  supplement or modify this memorandum as may be appropriate.

3

4  Dated: June 21, 2021              Respectfully submitted,

5                                    TRACY L. WILKISON
                                     Acting United States Attorney
6
                                     SCOTT M. GARRINGER
7                                    Assistant United States Attorney
                                     Chief, Criminal Division
8

9                                    /s/
                                     _____
10                                   KYLE W. KAHAN
                                     SUSAN S. HAR
                                     Assistant United States Attorneys
11
                                     Attorneys for Plaintiff
12                                   UNITED STATES OF AMERICA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Description**                                                          **Page**

TABLE OF AUTHORITIES..................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES....................................1

I.   INTRODUCTION.......................................................1

II.  STATEMENT OF THE STATUS OF THE CASE................................1

     A.   Trial Schedule...............................................1

     B.   Witnesses....................................................2

     C.   Expert Notice................................................3

     D.   902(11) Notice...............................................4

     E.   Adjudicated Pre-Trial Motions................................5

          1.   Defendant's Application to Proceed *Pro Se*............5

          2.   Defendant's Motion to Suppress........................5

          3.   Defendant's Motion *in Limine* to Exclude Evidence.....6

          4.   Defendant's Bench Trial Request.......................7

          5.   Defendant's Motion to Return Property.................7

     F.   Pending Pre-Trial Motions....................................8

          1.   Government's Motion *in Limine* to Exclude Improper
               Reference Regarding a Government Witness.............8

          2.   Defendant's Motion *in Limine* to Exclude Drug
               Expert...............................................8

          3.   Defendant's Motions *in Limine* to Exclude Cocaine
               Evidence, Dismiss, and Return Property, and
               Notices of Objections................................8

     G.   Voir Dire....................................................9

     H.   Jury Instructions...........................................10

     I.   Verdict Form................................................10

III. STATEMENT OF FACTS...............................................10

     A.   Defendant's Luggage Activates X-Ray Sensors at LAX;
          TSA Responds and Finds a Hidden Item in One of
          Defendant's Bags...........................................10

**<u>TABLE OF CONTENTS (CONTINUED)</u>**

<u>DESCRIPTION</u>                                                          <u>PAGE</u>

    B.   Law Enforcement Officers Discover That Both of
         Defendant's Two Pieces of Luggage Contain Concealed
         Cocaine...............................................11

    C.   Officer Cuevas Detains Defendant Boarding His Flight.....12

IV. STATEMENT OF THE CHARGED OFFENSES............................13

V.  LEGAL AND EVIDENTIARY ISSUES................................14

    A.   Statements by Defendant.................................15

         1.   Admissible Only When Offered by the Government......15

         2.   Inadmissible When Offered by Defendant.............15

    B.   Video Recordings........................................16

    C.   Chain of Custody........................................16

    D.   Cocaine Evidence........................................17

    E.   Physical Evidence.......................................18

    F.   Photographs.............................................18

    G.   Expert Testimony........................................19

    H.   Cross-Examination.......................................21

    I.   Defendant Should Be Precluded from Affirmatively
         Entering Any Evidence Not Produced......................22

    J.   Affirmative Defenses....................................23

    K.   No References to Punishment or Custodial Status.........23

    L.   Procedure if Defendant Testifies........................24

VI. CONCLUSION..................................................25

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

Faretta v. California,

   422 U.S. 806 (1975) .............................................. 25

Gallego v. United States,

   276 F.2d 914 (9th Cir. 1960) .................................... 17

Pope v. United States,

   298 F.2d 507 (5th Cir. 1962) .................................... 23

Taylor v. Illinois,

   484 U.S. 400 (1988) ............................................. 22

United States v. Black,

   767 F.2d 1334 (9th Cir. 1985) .................................. 21

United States v. Chadwell,

   798 F.3d 910 (9th Cir. 2015) ................................... 18

United States v. Fernandez,

   839 F.2d 639 (9th Cir. 1988) ................................... 16

United States v. Frank,

   956 F.2d 872 (9th Cir. 1992) ................................... 23

United States v. Gallagher,

   99 F.3d 329 (9th Cir. 1996) .................................... 25

United States v. Gilmore,

   811 F. App'x 997 (9th Cir. 2020) ............................... 20

United States v. Hankey,

   203 F.3d 1160 (9th Cir. 2000) .................................. 20

United States v. Harrington,

   923 F.2d 1371 (9th Cir. 1991) .................................. 17

United States v. Hearst,

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iii

**TABLE OF AUTHORITIES (CONTINUED)**

563 F.2d 1331 (9th Cir. 1977) ..................................... 22

United States v. Jefferson,

791 F.3d 1013 (9th Cir. 2015) ..................................... 14

United States v. Johnson,

  802 F.2d 1459 (D.C. Cir. 1986) .................................... 3

United States v. May,

622 F.2d 1000 (9th Cir. 1980) ..................................... 19

United States v. McCaleb,

552 F.3d 1053 (9th Cir. 2009) ..................................... 20

United States v. Miranda-Uriarte,

649 F.2d 1345 (9th Cir. 1981) ..................................... 21

United States v. Murillo,

255 F.3d 1169 (9th Cir. 2001) ..................................... 21

United States v. Oaxaca,

569 F.2d 518 (9th Cir. 1978) ..................................... 19

United States v. Ortega,

203 F.3d 675 (9th Cir. 2000) ..................................... 15

United States v. Scholl,

166 F.3d 964 (9th Cir. 1999) ..................................... 23

United States v. Sepulveda-Barraza,

645 F.3d 1066 (9th Cir. 2011) ..................................... 21

United States v. Soto-Zuniga,

837 F.3d 992 (9th Cir. 2016) ..................................... 14

United States v. Stearns,

550 F.2d 1167 (9th Cir. 1977) ..................................... 19

United States v. Valencia-Lopez,

971 F.3d 891 (9th Cir. 2020) ..................................... 21

**TABLE OF AUTHORITIES (CONTINUED)**

United States v. Venegas-Reynoso,

  524 F. App'x 373 (9th Cir. 2013) ................................. 20

**Statutes**

21 U.S.C. § 841(a)(1) ............................................. 13

**Rules**

C.D. Cal. R. 83-2.3.1 .............................................. 9

Fed. R. Crim. P. 23(a) ............................................. 7

Fed. R. Evid. 404(b) .............................................. 22

Fed. R. Evid. 608(b) .............................................. 22

Fed. R. Evid. 611(a) ........................................... 24, 25

Fed. R. Evid. 611(b) .............................................. 21

Fed. R. Evid. 702 ................................................. 19

Fed. R. Evid. 703 ................................................. 20

Fed. R. Evid. 704 ................................................. 20

Fed. R. Evid. 801(c) .............................................. 16

Fed. R. Evid. 801(d)(2)(A) ........................................ 15

Fed. R. Evid. 803(6) .............................................. 4

Fed. R. Evid. 901 ................................................. 17

Fed. R. Evid. 902(11) ............................................. 4

**Other Authorities**

Ninth Cir. Model Crim. Jury Instr., § 7.4 (2010 ed.) .............. 24

Ninth Cir. Model Crim. Jury Instr., § 9.15 (2010 ed.) ............. 14

Ninth Cir. Model Crim. Jury Instr., § 9.16 (2010 ed.) ............. 14

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.   INTRODUCTION**

3    As defendant CARLOS ALEXANDRE VIANA GROSSI ("defendant") was

4    traveling from Los Angeles International Airport ("LAX") to Sydney,

5    Australia, airport security discovered 2.251 kilograms of cocaine

6    packed in his two pieces of luggage.  Defendant is now charged in the

7    single-count Indictment ("Indictment") with one count of possessing

8    with intent to distribute at least 500 grams of a mixture or

9    substance containing a detectable amount of cocaine.  (Dkt. 12.)

10   This Trial Memorandum is filed in anticipation of trial set for July

11   1, 2021 at 9:00 a.m.

12

**II.   STATEMENT OF THE STATUS OF THE CASE**

13

**A.   Trial Schedule**

14   <u>Trial Date and Estimated Time</u>:  Jury trial is set to begin on

15   July 1, 2021 at 9:00 a.m.  The estimated time for the presentation of

16   the government's case-in-chief is two to three days.  This estimate

17   takes into account the presence and use of a Portuguese interpreter

18   to assist defendant.  The government does not have an estimate as to

19   defendant's case yet, but, as detailed below, believes that defendant

20   may be calling at least four additional witnesses.  The Pre-Trial

21   Conference is scheduled for June 28, 2021 at 2:00 p.m.

22   <u>Defendant</u>:  Defendant is detained pending trial and is

23   representing himself <u>pro se</u>.  Gerald C. Salseda has been appointed

24   advisory counsel to defendant.

25   <u>Stipulations and Exhibits</u>: At this time, the parties have yet to

26   agree to stipulate to the admissibility and chain of custody of

27   certain evidence (e.g., cocaine, surveillance footage).  However, the

28   government will apprise the Court and file any such stipulation(s) if

reached.  The government has filed a pretrial exhibit list listing the evidence it intends to produce at trial and defendant's stipulations and objections to the exhibits.  (Dkt. 169.)

**B.    Witnesses**

At this time, the government expects to call the following witnesses in its case-in-chief: 1) Charles Moore, Transportation Security Administration ("TSA") Lead Transportation Security Administration Officer; 2) John Becker, TSA Explosives Specialist; 3) Alfredo Cuevas, United States Customs and Border Protection ("CBP") Officer; 4) Homeland Security Investigations ("HSI") Special Agent ("SA") Jorge Marron,; 5) Flynt Goodson, United States Food and Drug Administration ("FDA") Drug Chemist (formerly with CBP Laboratory); and 6) HSI SA Juan Munoz.

The government respectfully requests leave to update this list, if necessary, in advance of trial.  The government may call additional witnesses in rebuttal, depending on whether defendant calls any witnesses, and on the testimony such witnesses give.  The government would respectfully request permission to re-call any of the witnesses or to call additional witnesses should unforeseen circumstances arise.

On June 18, 2021, Mr. Salseda advised the government that defendant would like to call the following witnesses: 1) HSI SA Jorge Marron; 2) HSI SA Rafael Torres; 3) Romolo Valle, Los Angeles Airport Police Department Officer; 4) CBP Officer Alfredo Cuevas; 5) Ryan Kato, CBP Fingerprint Analyst; 6) HSI SA Kevin Radisay,; and 7) FDA Chemist Flynt Goodson.

The government does not intend to call SA Torres, Officer Valle, Mr. Kato, or SA Radisay in its case-in-chief.  The

2

government requests an offer of proof regarding SA Torres, Officer Valle, SA Radisay, and Mr. Kato, so that the Court may assess whether their testimony would be relevant and otherwise admissible.  Defendant cannot call a witness in his case-in-chief as a pretext for impeaching that witness's credibility or to implicate the witness as a "bad person" to present otherwise inadmissible evidence.  See United States v. Johnson, 802 F.2d 1459, 1466 (D.C. Cir. 1986).

### C.   Expert Notice

The government provided notice of two experts expected to testify in the government's case-in-chief: HSI SA Juan Munoz, and FDA Chemist Flynt S. Goodson.  SA Munoz will testify, based on his training and experience, about the modus operandi of narcotics traffickers in both international and domestic markets, including the use of blind couriers by drug trafficking organizations to transport high-value narcotics, the price of illegal narcotics in the relevant geographic markets, and quantities of narcotics for personal drug use and distribution.  Mr. Goodson will testify as to the results of the scientific testing and weighing that was conducted on the controlled substances in this case.  Mr. Goodson's testimony will also include: (1) the lab's chain of custody practices; (2) methodologies followed in analyzing the drugs; (3) the reliability of the methods employed; and (4) the results of his analysis, including identification of the seized substances as containing cocaine, gross weight, and net weight.  Defendant has filed a motion in limine to exclude testimony of the government's drug distribution expert.  (Dkt. 70.)

1

    **D.**    **902(11) Notice**

2

    The government intends to admit United Airlines records and

3

three LAX surveillance videos under Rule 902(11).  Rule 902(11)

4

provides that certified domestic records that meet the requirements

5

of Rule 803(6)(A)-(C) are self-authenticating.  Such a showing can be

6

met through a certification from custodian or other qualified person.

7

Fed. R. Evid. 902(11).  On June 11, 2021, the government provided

8

written notice to defendant of its intent to introduce the previously

9

produced United Airlines records and LAX surveillance footage.

10

    Defendant has stipulated to the admission of the United Airlines

11

records for all purposes.[1]  (Dkt. 169 at 14-15.)  As for the LAX

12

surveillance video, defendant declined to stipulate to admissibility,

13

but failed to specify a basis for his objection as required by the

14

Court.  (Id. at 8-10; Dkt. 18.)  The government has produced to the

15

defense a declaration from United States Customs and Border

16

Protection – LAX Physical Security Officer Jimmy Ojeda.  Officer

17

Ojeda's declaration details his qualifications and familiarity with

18

the relevant LAX surveillance systems and certifies that the three

19

surveillance videos meet the requirements of Rule 803(6)(A)-(C).

20

Accordingly, the surveillance footage is self-authenticating under

21

Rule 902(11).

22

23

24

25

26

    [1] The government also produced a declaration from United Airlines Custodian of Record Thomas D. Campuzano.  Mr. Campuzano's

27

declaration identifies him as a duly authorized Custodian of Records for United Airlines and certifies that the United Airlines records

28

meet the requirements of Rule 803(6)(A)-(C).  Accordingly, the records are self-authenticating under Rule 902(11).

1        **E.   Adjudicated Pre-Trial Motions**

2             1.   Defendant's Application to Proceed *Pro Se*

3        On April 27, 2020, defendant filed an <u>ex parte</u> application to

4   proceed <u>pro se</u>.  (Dkt. 58.)  On April 28, 2020, the government filed

5   a motion in opposition.  (Dkt. 59.)  The government was not opposed

6   to defendant proceeding <u>pro se</u>, but instead requested the Court

7   conduct the hearing in-person; a task made more difficult due to the

8   COVID-19 pandemic.  On May 20, 2021 the Court granted defendant's <u>ex</u>

9   <u>parte</u> application to proceed <u>pro se</u> and appointed his former counsel,

10  Gerald C. Salseda, as advisory counsel.  (Dkt. 142.)

11            2.   Defendant's Motion to Suppress

12       On February 3, 2020, defendant filed a motion to suppress

13  seeking to exclude all items seized by law enforcement in this case,

14  including the cocaine found inside defendant's luggage, his post-

15  arrest statements, evidence found on his cell phone and electronic

16  devices, and any evidence seized as fruit of an unlawful search.

17  (Dkt. 47.)  The government filed an opposition and argued that the

18  initial inspection of defendant's luggage was a permissible

19  administrative search and subsequent search of the luggage's contents

20  was a permissible border search.  (Dkt. 52.)  The government agreed

21  not to introduce evidence from defendant's cell phone or defendant's

22  post-arrest statements, but reserved the right to introduce

23  defendant's statements for impeachment purposes.  (<u>Id.</u>)

24       On July 6, 2020, this Court issued its ruling on the motion to

25  suppress and denied the motion's request to exclude the cocaine found

26  in defendant's luggage.  (Dkt. 84.)  The Court did, however, exclude

27  both the defendant's post-arrest statements and evidence seized from

28  his cell phone and electronic devices.  The Court further prohibited

1   the government from using defendant's post-arrest statements for

2   impeachment purposes.  (Id.)

3            3.   Defendant's Motion *in Limine* to Exclude Evidence

4        On March 20, 2020, in addition to the above motion to suppress,

5   defendant filed a motion in limine to exclude his statements to HSI

6   agents, any items seized from his electronics, and any prior bad

7   acts.  (Dkt. 53.)  The government filed a non-opposition motion.

8   (Dkt. 90.)  The government expressed concern that, despite the

9   Court's order excluding defendant's statements to HSI, defendant

10  would "continue to allege at trial purported misconduct by the HSI

11  agents during those interviews, including claims that an HSI agent

12  threatened defendant with a knife."  The government requested

13  permission to rebut the claims with audio recordings of the interview

14  and testimony from the HSI agents.  (Id.)

15       On May 5, 2021, the Court ruled that the government waived any

16  argument related to evidence of coercion or threats by HSI agents

17  against defendant and that "nothing in the government's argument

18  undermines the court's conclusions" from its prior order.  (Dkt.

19  139.)  The Court ordered that, if defendant testified, the government

20  could call witnesses to rebut any claims of "malfeasance or

21  threatening conduct," but precluded the government from introducing

22  or referring to audio recordings during the trial.  The Court

23  concluded that "[t]he officers' descriptions of defendant's

24  statements to agents may not be used unless defendant opens the door

25  to the issues of malfeasance or threatening conduct on the part of

26  the HSI agents."  (Id.)

27

28

1

### 4.   Defendant's Bench Trial Request

2   On December 8, 2020, defendant filed a Notice of Waiver of Jury

3   Trial and Request for a Bench Trial.  (Dkt. 112.)  On December 12,

4   2020, the government filed its notice of non-consent and maintained

5   its request for a jury trial.  (Dkt. 115.)  The following month,

6   defendant filed a motion requesting a bench trial over the

7   government's consent.  (Dkt. 121.)  The government filed its

8   opposition on January 21, 2021, citing Rule 23(a) of the Federal Rule

9   of Criminal Procedure's requirement that a defendant's trial "must be

10   by jury" unless the government also consents to a nonjury trial.

11   Fed. R. Crim. P. 23(a).  The Court denied defendant's motion without

12   prejudice.  (Dkt. 126.)

13

### 5.   Defendant's Motion to Return Property

14   On May 4, 2020, defendant filed a motion to return seized

15   property, namely his Brazilian passport, a laptop, an Apple iPhone 6,

16   a USB flash drive, and £2,700.  (Dkt. 60.)  The government filed an

17   opposition motion and requested the Court deny the motion as to the

18   return of the passport and cell phone.  (Dkt. 79.)  For the latter,

19   the government suggested, in the alternative, that the passport be

20   released to United States Probation and Pretrial Services.  Finally,

21   the government noted that law enforcement never seized £2,700 from

22   defendant.  (Id.)  On May 6, 2021, the Court ordered the return of

23   the cell phone, flash drive, and laptop.  The Court further ordered

24   the government release the passport to United States Probation and

25   Pretrial Services.  (Dkt. 140)  The government complied with the

26   Court's order on May 26, 2021, and HSI Agent Marron provided the

27   passport to United States Probation and Pretrial Services.

28

7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**F.    Pending Pre-Trial Motions**

          1.    Government's Motion *in Limine* to Exclude Improper Reference Regarding a Government Witness

On June 19, 2020, the government filed a motion in limine under seal regarding improper references to a government witness. (Dkt. 76.) Defendant filed his opposition under seal on June 29, 2020, (Dkt. 83.) The government filed its reply on November 13, 2020. (Dkt. 110.) On June 17, 2021, the government filed a supplement to the motion in limine to explain a change of position from within the original motion. (Dkt. 167.) The Court has yet to rule on this motion.

          2.    Defendant's Motion *in Limine* to Exclude Drug Expert

On June 17, 2020, defendant filed a motion in limine to exclude testimony of the government's drug expert. (Dkt. 70.) The government filed an opposition providing HSI Agent Juan Munoz' qualifications to testify as an expert regarding the modus operandi of narcotics traffickers both international and domestic, the price of illegal narcotics in the relevant geographic markets, and quantities of narcotics for personal drug use and distribution. (Dkt. 80.) In light of the government's supplemental notice, the government believes that defendant's motion is moot. The Court has yet to rule on this motion.

          3.    Defendant's Motions *in Limine* to Exclude Cocaine Evidence, Dismiss, and Return Property, and Notices of Objections

On June 4, 2021, defendant filed three additional motions in limine and five notices of objection.[2] Defendant's motions in limine

---

    [2] The motions and objections seem to re-raise issues from defendant's previously stricken motions. (Dkts. 66-69.) Those motions had been filed by defendant on June 12, 2020, while he was

*(footnote cont'd on next page)*

8

include a motion to exclude cocaine evidence (Dkt. 149), a motion to return £2,700and impose sanctions on the government (Dkt. 150), and a motion to dismiss due to two subjects in interest (Dkt. 151.)  The government filed its responses on June 14, 2021.  (Dkts. 158-160.) Defendant filed his replies on June 21, 2021.  (Dkts. 173-175.)  The Court has yet to rule on these motions.

Defendant's notices of objection include a notice of objection to his assigned professionals, to the government dismissing the case without defendant's consent, to the HSI agents who interview him on April 30, 2019, to the status of his visa and reported death threat he received from someone in Brazil, and to note his passport has expired.  (Dkts. 152-156.)  The government filed its omnibus response on June 14, 2021.  (Dkt. 161.)  Defendant filed his reply on June 21, 2021.  (Dkt. 176.)  The Court has yet to rule on these objections.

### G.  Voir Dire

Defendant has submitted three separate filings with proposed voir dire questions.  (Dkts. 120, 138, 157.)  The government objects to the entirety of defendant's proposed voir dire questions in dockets 138 and 157.  Docket 138 specifically focuses on questions related to COVID-19 exposure outside and inside the courtroom and personal views on the virus.  (Dkt. 138.)  Docket 157 adds an additional question about a juror's views on COVID-19 but couches it in language referencing defendant's two-year detention.  (Dkt. 157.) Defendant also requests this Court ask jurors their thoughts on whether this case should proceed "because of the delay of more than 2 (two) years . . . due to several continuances made by the U.S.

_____

still represented by counsel.  On its own motion, the Court had struck the motions for failure to comply with the Local Rules, specifically Local Rule 83-2.3.1.  (Dkt. 71.)

9

Government . . .")  (Id.)  Such questioning is improper and would inject prejudicial information before the jury.

On June 18, 2021, the government submitted its proposed voir dire questions.  (Dkt. 170.)

## H.   Jury Instructions

The parties have met and conferred regarding proposed jury instructions.  Of the 45 proposed jury instructions, the parties have not reached agreement on 17 of them.  Accordingly, the government has filed a set of joint jury instructions and a set of disputed instructions.  The latter lists the disputed jury instructions, defendant's objections, and the government's response.  (Dkts. 171, 172.)

## I.   Verdict Form

The parties have met and conferred regarding a joint proposed verdict form but disagree on the elements the government must prove beyond a reasonable doubt.  Defendant argues that the government must prove in its case-in-chief that defendant knowingly possessed 2,251 grams of cocaine.  The government contends that its burden only requires proving beyond a reasonable doubt that defendant knowingly possessed a controlled substance and that the weight was over 500 grams.  The government has filed a unilateral verdict form addressing this dispute.  (Dkt. 168.)

## III.  STATEMENT OF FACTS

### A.   Defendant's Luggage Activates X-Ray Sensors at LAX; TSA Responds and Finds a Hidden Item in One of Defendant's Bags

On April 30, 2019 at approximately 5:14 p.m., at Los Angeles International Airport, TSA Lead Officer Charles Moore was informed of a checked-in bag that alerted an x-ray machine of a suspicious,

concealed potential explosive.  Officer Moore arrived at the baggage room and assisted in retrieving the yellow bag that caused the alert. When Officer Moore opened the bag, he could not find the item that caused the alarm.  He then observed what appeared to be glue and tape holding the bottom seams of the luggage together, indicating that that part of the luggage was not manufactured by a machine or factory.  Because he could not physically find the item causing the alarm, Officer Moore reviewed the x-ray machine and discovered that the suspicious item was concealed behind the luggage's pull handles.

### B.   Law Enforcement Officers Discover That Both of Defendant's Two Pieces of Luggage Contain Concealed Cocaine

TSA Explosives Specialist John Becker arrived at the baggage room to determine whether the concealed item contained explosives. Specialist Becker reviewed the x-rays of the yellow luggage and determined it did not contain explosives.  Specialist Becker then examined the interior of the yellow luggage and saw evidence of tampering on the edges of the interior near a black plastic sheet separating the inner lining from the exterior.  Specialist Becker then examined the area underneath the plastic sheet and saw a hidden vacuum-sealed package.  Specialist Becker left the vacuum-sealed package inside the yellow luggage and noticed a blue bag was brought into the room.  SA Marron later arrived at the baggage room and retrieved a vacuum-sealed package hidden between the blue bag's inner lining and the black plastic sheet separating the lining from the exterior.

At approximately 8:15 p.m., CBP Officer Alfredo Cuevas arrived at the baggage area and observed one blue bag and one yellow bag. Officer Cuevas inspected one of the bags and noticed its tag

identified "Viana Grossi" as the owner of the bag along with flight details.  Officer Cuevas also noticed a vacuum-sealed package inside each bag.  Officer Cuevas cut open one vacuum-sealed package and observed a white-powdery substance.  Based on the bag tag and passenger information provided by the Passenger Analysis Unit, Officer Cuevas learned that the luggage belonged to a Carlos Alexandre Viana Grossi, who was heading to United Airlines Flight #839 departing to Sydney, Australia at Gate No. 74.

### C.   Officer Cuevas Detains Defendant Boarding His Flight

At approximately 10:00 p.m., Officer Cuevas met defendant in the jetway hall boarding his flight to Sydney.  Because he was in plain clothes, Officer Cuevas showed defendant his badge and introduced himself as a CBP officer.  Defendant presented his passport upon Officer Cuevas' request.  Officer Cuevas asked defendant if he had checked in any luggage and to describe the luggage.  Defendant stated he had checked in two bags: one yellow and one blue.  Based on defendant's response, Officer Cuevas handcuffed defendant and transported him to a secondary inspection area.  During the detention process, defendant appeared emotionless and did not question what was happening.

At the secondary inspection area, Officer Cuevas asked defendant in English a specific set of questions known as a "Binding Declaration."  During the questions, Defendant stated, in English, that the yellow and blue bags belonged to him and that he had personally packed the bags.  Officer Cuevas inspected the bags in front of defendant, placed them in the x-ray machine, and eventually opened the second vacuum-sealed package.  At approximately 10:46 p.m., Officer Cuevas field-tested the second vacuum-sealed package's

12

consents and it tested positive for cocaine.  After this positive test, Officer Cuevas transferred the case back to HSI.  During the inspection process, defendant again appeared emotionless and did not question anything.

The cocaine was eventually transported to a secured vault for storage and safekeeping.  On May 8, 2021, the cocaine was transported to the CBP Laboratory for testing and analysis.  Then-CBP Chemist Flynt Goodson examined the cocaine and discovered the vacuum-sealed packages actually contained four separate bags of cocaine.  Mr. Goodson transferred the cocaine into four separate plastic bags.  He then weighed each bag and determined the total net weight of all four bags was 2,251 grams.  Mr. Goodson then conducted a series of tests and concluded that the substance was, in fact, cocaine, a federally controlled substance.

HSI SA Juan Munoz, utilizing his experience in drug trafficking organizations, narcotics sales, and international narcotic smuggling and trafficking, determined that the amount of cocaine recovered in this case was for distribution purposes and the expected value was between $225,100 to $675,300.

## IV.   STATEMENT OF THE CHARGED OFFENSES

Defendant is charged in the single-count FSI with possessing with intent to distribute at least 500 grams of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii)(II).

The elements of possession with intent to distribute at least 500 grams of a mixture or substance containing a detectable amount of cocaine, as charged in the Indictment, are: (i) defendant knowingly possessed cocaine; and (ii) defendant possessed the cocaine with the

intent to distribute it to another person.  Further, it does not
matter whether the defendant knew that the substance was cocaine; it
is sufficient that the defendant knew that it was some kind of a
federally controlled substance.  Ninth Cir. Model Crim. Jury Instr.,
§ 9.15 (2010 ed.); United States v. Soto-Zuniga, 837 F.3d 992, 1004-
05 (9th Cir. 2016) (knowledge of type and quantity of drugs not
element of offense).  To "possess with intent to distribute" means to
possess with intent to deliver or transfer possession of cocaine to
another person, with or without any financial interest in the
transaction.  Ninth Cir. Model Crim. Jury Instr., § 9.15 (2010 ed.)

Additionally, to trigger the statutory mandatory minimum
sentence of five years' imprisonment, the government must prove
beyond a reasonable doubt that the amount of the substance containing
cocaine "equaled or exceeded" 500 grams.  Ninth Cir. Model Crim. Jury
Instr., § 9.16 (2010 ed.)  The government does not have to prove that
the defendant knew the quantity of cocaine.  Id.; United States v.
Jefferson, 791 F.3d 1013 (9th Cir. 2015).

**V.   LEGAL AND EVIDENTIARY ISSUES**

The government intends to prove its case at trial through the
following: 1) the testimony of the TSA and HSI agents who discovered
the narcotics in defendant's checked baggage; 2) the testimony of the
arresting CBP Officer and his subsequent observations of defendant;
3) video recordings of defendant at LAX on the date in question;
4) photographic evidence; 5) airlines records of defendant's travel
plans; and 6) the testimony of several expert witnesses. The
government will not exhaustively recite every legal issue in this
case below, but the following legal issues may arise at trial.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### A.    Statements by Defendant

At trial, the government will introduce statements made by defendant to Officer Cuevas immediately prior to his arrest and interrogation by HSI.  These include statements at the jetway and at the baggage room where defendant admits to checking in yellow and blue suitcases and packing them himself.  All subsequent statements made to HSI agents have been suppressed pursuant to this Court's ruling.  (Dkt. 84.)

### 1.    Admissible Only When Offered by the Government

These statements are admissible as admissions by a party opponent and are not hearsay when offered by the government.  Fed. R. Evid. 801(d)(2)(A).

### 2.    Inadmissible When Offered by Defendant

While the government may present evidence regarding a defendant's statements, a defendant is not entitled to elicit his own prior statements from other witnesses under Federal Rule of Evidence 801(d)(2)(A) because they are hearsay.  See United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000) (non-self-inculpatory statements, even if made contemporaneously with other self-inculpatory statements, are inadmissible hearsay).  To permit otherwise would place a defendant's statements "before the jury without subjecting himself to cross-examination, precisely what the hearsay rule forbids."  Id. at 682 (district court properly granted the government's motion in limine to exclude introducing defendant's post-arrest statements through cross-examination of INS agent) (quoting United States v. Fernandez, 839 F.2d 639, 650 (9th Cir. 1988)).

1      In a motion in limine and several notices of objections,

2  defendant repeatedly refers to statements he made to Homeland

3  Security Investigation agents on April 30, 2019.  (Dkt Nos. 149 at p.

4  4; 151 at p. 5; 154 at pp. 2-3.)[3]  The government is now concerned

5  that defendant will seek to introduce his own self-serving statements

6  to HSI agents at trial.  The government contends that defendant is

7  barred from introducing his own prior, out-of-court statements at

8  trial unless either introduced by the government or if defendant

9  subjects himself to cross-examination.

10      While defendants are not prevented from introducing evidence

11  necessary to put on their defense, they must do so by testifying.

12  Fed. R. Evid. 801(c); see also Fernandez, 839 F.2d at 640.  Defendant

13  should not be permitted to place any of his prior statements before

14  the Court or jury without subjecting himself to cross-examination.

15  Nor should he be permitted to introduce his prior statements through

16  defense witnesses (other than defendant himself) or by cross-

17  examining government witnesses with defendant's hearsay statements.

18      **B.   Video Recordings**

19      The government intends to introduce three video recordings of

20  the defendant taken on April 30, 2019 at LAX.  The videos show

21  defendant traveling through LAX and carrying yellow and blue

22  suitcases consistent with the luggage searched in this matter.

23      **C.   Chain of Custody**

24      The government will seek to introduce the cocaine defendant

25  possessed.  Several of the law enforcement personnel and the chemist

26

27 ───────────────

28      [3] As discussed above, these statements have been suppressed by
   this Court and the government does not intend to introduce them at
   trial.

1   who handled the evidence will testify as to the manner of recovery,

2   storage, and testing of the evidence.  To be admitted into evidence,

3   a physical exhibit must be in substantially the same condition as

4   when the crime was committed.  Fed. R. Evid. 901.  The Court may

5   admit the evidence if there is a "reasonable probability the article

6   has not been changed in important respects."  Gallego v. United

7   States, 276 F.2d 914, 917 (9th Cir. 1960).  This determination is to

8   be made by the trial judge and will not be overturned except for

9   clear abuse of discretion.  Factors the Court may consider in making

10  this determination include the nature of the item, the circumstances

11  surrounding its preservation, and the likelihood of intermeddlers

12  having tampered with it.  Id. at 917.

13      In establishing chain of custody as to an item of physical

14  evidence, the government is not required to call all persons who may

15  have come into contact with the piece of evidence.  United States v.

16  Harrington, 923 F.2d 1371, 1374 (9th Cir. 1991).  Moreover, a

17  presumption of regularity exists in the handling of exhibits by

18  public officials.  Therefore, to the extent that alleged or actual

19  gaps in the chain of custody exist, such gaps go to the weight of the

20  evidence rather than to its admissibility.  Id.

21      Defendant has indicated he will not stipulate to the chain of

22  custody of the cocaine.

23      **D.  Cocaine Evidence**

24      As described above, once chain of custody has been established,

25  physical items may be admitted into evidence as exhibits.  See

26  Harrington, 923 F.2d at 1374.  Physical items include seized

27  contraband evidence, like the cocaine here.  Although the cocaine may

28  be admitted into evidence as an exhibit, that evidence is not sent

back to the jury room for safety reasons.  This is to protect the
jury from mishandling the contraband and accidentally harming
themselves.  The contraband and other evidence which is admitted but
not sent back to the deliberation room, like the recordings,
photographs, or other physical exhibits, but should instead remain in
the courtroom until such time, if any, the jury requests to inspect
the item in the presence of the Court.  A non-witness HSI agent will
be available to safely handle the contraband if the jury wishes to
inspect the contraband once deliberations have begun.  The HSI agent
will maintain control of the cocaine throughout the proceedings and
will secure it back into evidence when the proceedings conclude.

Defendant has indicated he will not stipulate to test results or
weight of the cocaine.

### E.   Physical Evidence

The government will also seek to introduce the actual, physical
luggage defendant used to transport and conceal the cocaine.  During
deliberations, the government requests that the luggage be sent into
the jury room for inspection by the jurors outside the presence of
the court.  See, e.g., United States v. Chadwell, 798 F.3d 910, 914
(9th Cir. 2015) (noting that in regard to physical video exhibits,
[t]he decision to send properly admitted exhibits to the jury room
during deliberations is within the discretion of the trial court").
A jury is entitled to "view paper exhibits, photographs, and physical
exhibits" during deliberations in a private manner.  Id.

### F.   Photographs

The government will introduce photographs of: (1) the cocaine,
packaging, and bags they were found in as they appeared when
discovered at LAX; (2) the cocaine and packaging as they appeared

after testing and analysis; (3) baggage tags and checked baggage claim receipts both from the checked luggage themselves and seized from defendant's person; (4) x-rays of the checked luggage; (5) stills from surveillance footage; and (6) defendant's boarding pass. Photographs are generally admissible as evidence. See United States v. Stearns, 550 F.2d 1167, 1170-71 (9th Cir. 1977). Photographs should be admitted so long as they fairly and accurately represent the event or object in question. United States v. Oaxaca, 569 F.2d 518, 525 (9th Cir. 1978). The Ninth Circuit has held that "[p]hotographs are admissible as substantive as well as illustrative evidence." United States v. May, 622 F.2d 1000, 1007 (9th Cir. 1980).

Defendant objects to every photograph that does not have a time and date on it. There is no caselaw in support of the argument that the admissibility of a photograph depends on the presence of a time and date on the photograph itself. The government expects witnesses to testify to the approximate date and time of the image depicted in each photograph.

### G. Expert Testimony

The government intends to introduce expert testimony from a forensic chemist regarding the composition and weight of the charged narcotics, and an HSI agent regarding the modus operandi of international drug trafficking organizations, that two kilograms of cocaine is for distribution and not personal use, and the general and wholesale prices of cocaine in Australia and Los Angeles, specifically in April 2019. There is a pending motion in limine to exclude this testimony. (Dkt. 70.)

1    As a general matter, if specialized knowledge will assist the

2    trier of fact in understanding the evidence or determining a fact in

3    issue, a qualified expert witness may provide opinion testimony on

4    the issue in question.  Fed. R. Evid. 702.  Expert opinion may be

5    based on hearsay or facts not in evidence, where the facts or data

6    relied upon are of the type reasonably relied upon by experts in the

7    field.  Fed. R. Evid. 703.  An expert may also provide opinion

8    testimony even if it embraces an ultimate issue to be decided by the

9    trier of fact.  Fed. R. Evid. 704.

10    The Ninth Circuit has held that the admissibility of expert

11    testimony generally turns on the trial court answering the following

12    questions: a) Whether the opinion is based upon scientific,

13    technical, or other specialized knowledge; b) Whether the expert's

14    opinion would assist the trier of fact in understanding the evidence

15    or determining a fact in issue; c) Whether the expert has appropriate

16    qualifications; d) Whether the testimony is relevant and reliable; e)

17    Whether the methodology or technique the expert uses "fits" the

18    conclusions; and, f) Whether the probative value is substantially

19    outweighed by the risk of unfair prejudice, confusion of issues, or

20    undue consumption of time.  United States v. Hankey, 203 F.3d 1160,

21    1168 (9th Cir. 2000).

22    The government's expert witness testimony described above is

23    well within this established compass.  The Ninth Circuit has held

24    that expert testimony regarding such a person's methods, results, and

25    conclusions is admissible under Rule 702.  E.g., United States v.

26    McCaleb, 552 F.3d 1053, 1060-61 (9th Cir. 2009).  And while an expert

27    on drug trafficking organizations modus operandi cannot opine that

28    blind drug mules do not exist (see United States v. Venegas-Reynoso,

524 F. App'x 373, 377 (9th Cir. 2013)), the expert can still testify about the behavior of blind mules, and the use and rarity of blind mules if it goes towards the heart of the defense.  See United States v. Gilmore, 811 F. App'x 997, 999 (9th Cir. 2020) (no abuse in discretion allowing expert witness to testify with limitations "on the structure and operation of drug trafficking organizations, including use of 'blind mules'").  So long as the testimony on this subject is based on the expert's experience with drug traffickers, does not state an opinion on the defendant's state of mind or knowledge, and is reliable, it is admissible.  See United States v. Valencia-Lopez, 971 F.3d 891, 901 (9th Cir. 2020) (requiring a finding of reliability to justify an opinion on the rarity of drug cartels using coerced carriers; United States v. Murillo, 255 F.3d 1169, 1178 (9th Cir. 2001) (finding that expert testimony on the subject valid when limited to the expert's experience).

## H.   Cross-Examination

The scope of a cross-examination is within the discretion of the trial court.  Fed. R. Evid. 611(b).  It should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness.  The trial court may, in the exercise of its discretion, permit inquiry into additional matters as if on direct examination.  Id.

A defendant who testifies at trial may be cross-examined as to all matters reasonably related to the issues the defendant puts in dispute.  United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir. 1981).  A defendant has no right to avoid cross-examination on matters which call into question the defendant's claim of innocence.  Id.  Moreover, a defendant who testifies at trial waives

1  his Fifth Amendment privilege and may be cross-examined on matters

2  made relevant by his direct testimony.  United States v. Black, 767

3  F.2d 1334, 1341 (9th Cir. 1985).

4     The scope of a defendant's waiver is coextensive with the scope

5  of relevant cross-examination.  United States v. Cuozzo, 962 F.2d

6  945, 948 (9th Cir. 1992).  The extent of the waiver is determined by

7  whether the question reasonably relates to subjects covered by

8  defendant's direct testimony.  United States v. Hearst, 563 F.2d

9  1331, 1340 (9th Cir. 1977).  Since a witness's credibility always

10  relates to the witness's testimony, the government may cross-examine

11  a defendant about specific instances of dishonesty.  Fed. R. Evid.

12  608(b).  Additionally, the government may impeach a defendant in

13  cross-examination with evidence that might otherwise be inadmissible

14  under Fed. R. Evid. 404(b).

15  ### I.  Defendant Should Be Precluded from Affirmatively Entering Any Evidence Not Produced

16

17     To the extent defendant may attempt to introduce or use any

18  evidence at trial that he has not produced to the government, such

19  documents should be excluded.  See Taylor v. Illinois, 484 U.S. 400,

20  415 (1988) (defendant's failure to comply with, or object to,

21  government's discovery request before trial justified exclusion of

22  unproduced evidence).  Where a party fails to produce discovery as

23  required by Rule 16, the rule empowers the district court to

24  "prohibit the party from introducing evidence not disclosed, or it

25  may enter such other order as it deems just under the circumstances."

26  Fed. R. Crim. P. 16(d)(2)(C) and (D).

27     This sanction may be applied to a defendant.  The Ninth Circuit

28  has held that where a defendant fails to produce reciprocal discovery

22

or fails to provide timely notice of his or her intention to call an expert witness, it is well within the district court's discretion to exclude such defense evidence, especially where the defense disclosure was made after the start of trial.  See United States v. Scholl, 166 F.3d 964, 972 (9th Cir. 1999) (upholding district court's decision to exclude defense evidence due to defendant's strategic decision to withhold discovery until the last minute).  The same should apply here.

### J.   Affirmative Defenses

As of the date of this filing, defendant has not given affirmative notice of an intent to rely on any defense of mental incapacity, entrapment, duress, or alibi, or any other affirmative defense.  Therefore, to the extent defendant may attempt to rely on such a defense, the government reserves the right to object and to move to preclude the defendant from asserting such a defense.

### K.   No References to Punishment or Custodial Status

Defendant has repeatedly referenced in custodial status, in various filings, including jury instructions and motions in limine. Defendant should be precluded from making any reference to a potential sentence during all phases of the trial including jury selection, opening statements, examination of witnesses and closing. This includes any reference to punishment in terms of any potential custodial sentence or the potential impact a conviction will have on defendant's immigration status.

"It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict." United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1992).  As explained in Pope v. United States, 298 F.2d 507 (5th Cir. 1962):

> To inform the jury that the court may impose minimum or maximum sentence, will or will not grant probation, when a defendant will be eligible for parole, or other matters relating to disposition of the defendant, tend to draw the attention of the jury away from their chief function as sole judges of the facts, open the door to compromise verdicts and to confuse the issue or issues to be decided.

Id. at 508.

The Ninth Circuit has recognized this principle by prohibiting the jury from considering punishment in deciding whether the government has proved its case against the defendant beyond a reasonable doubt.  See Ninth Cir. Model Crim. Jury Instr., § 7.4 (2010 ed.)  The Court should therefore prohibit defendant from making any reference to punishment in the presence of the jury at any point in these proceedings.

Likewise, defendant should be precluded from referencing to the jury his custodial status.  That defendant was ordered permanently detained by a magistrate judge under the Bail Reform Act (Dkt. 3), or that the trial in this case has been continued for a certain period of time under the Speedy Trial Act, is not relevant to the jury's determination as to whether defendant possessed with intent to distribute at least 500 grams of cocaine.  Rather, such reference would only unfairly prejudice the government, confuse the issues, mislead the jury, and waste time.

**L.   Procedure if Defendant Testifies**

If defendant chooses to testify, the government requests that the Court require defendant to proceed in a question-answer format.

Under Federal Rule of Evidence 611(a), courts should "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect

witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a). The Court's rulings on matters of trial management include "such concerns as whether testimony shall be in the form of a free narrative or responses to specific questions." Fed. R. Evid. 611 advisory committee's note.

Requiring defendant to proceed in a question-answer format (rather than a narrative fashion) will facilitate each of the interests set forth in Rule 611(a). Like all other witnesses, defendant should be required to answer questions that are posed, so as to assure opposing counsel the opportunity to lodge any objection prior to defendant's answer. This is particularly important to avoid inadmissible evidence from being presented to the jury. Like all other litigants, pro se defendants must comply with substantive and procedural courtroom rules. See Faretta v. California, 422 U.S. 806, 834 n. 46 (1975) (explaining that self-representation is not a license to ignore "relevant rules of procedural and substantive law."). It is also proper to restrict a defendant from proceeding in a narrative fashion in order to "insur[e] that the trial proceed in an orderly and fair manner." United States v. Gallagher, 99 F.3d 329, 332 (9th Cir. 1996).

**VI. CONCLUSION**

The government respectfully requests permission to file additional trial memoranda if necessary.