TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
KYLE W. KAHAN (Cal. Bar No. 298848)
Special Assistant United States Attorney
SUSAN S. HAR (Cal. Bar No. 301924)
Assistant United States Attorney
Public Corruption and Civil Rights Section
     1100/1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2238/3289
     Facsimile: (213) 894-0141/2927
     E-mail:    kyle.kahan@usdoj.gov
                susan.har@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>CARLOS ALEXANDRE VIANA GROSSI,<br><br>　　　　Defendant. | No. CR 19-302-FMO<br><br>GOVERNMENT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT AND SENTENCING POSITION FOR DEFENDANT CARLOS ALEXANDRE VIANA GROSSI; EXHIBITS A-E<br><br>Hearing Date: November 4, 2021<br>Hearing Time: 2:30 p.m.<br>Location:　　Courtroom of the Hon. Fernando M. Olguin |

　　　Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Special Assistant United States Attorney Kyle W. Kahan, and Assistant United States Attorney Susan S. Har, hereby files its sentencing position and objections to the presentence investigation report for defendant CARLOS ALEXANDRE VIANA GROSSI.

//

//

This sentencing position and objection is based upon the attached memorandum of points and authorities, the files and records in this case, attached exhibits, and such further evidence and argument as the Court may permit.

Dated: October 13, 2021          Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

/s/ Kyle W. Kahan
------------------------------
KYLE W. KAHAN
Special Assistant United States Attorney

SUSAN S. HAR
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

CARLOS ALEXANDRA VIANA GROSSI ("defendant"), a practicing attorney in his native Brazil, artfully concealed nearly five pounds of cocaine inside of his two suitcases in order to transport the narcotics to Australia for distribution. To accomplish this, the cocaine was divided into four separate bags, each vacuum-sealed, wrapped in cellophane packaging, and hidden beneath the bottom panels of two distinct suitcases capable of concealing the differently sized packages. Once concealed, defendant took possession of the suitcases and attempted to transport them from London, England to Sydney, Australia. After avoiding detection in London, defendant landed in the Los Angeles International Airport for a layover stop, whereupon officials discovered the cocaine hidden within the suitcases. Shortly thereafter, defendant was apprehended and arrested minutes before he was about to board his flight to Australia.

For his crimes, defendant was charged in a single-count indictment with Possession with Intent to Distribute at Least 500 Grams of Cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii)(II). On July 2, 2021, following a two-day trial, a federal jury found defendant guilty of the sole charge. (Dkt. 209.)

The United States Probation and Pretrial Services Office ("USPO") issued its Presentence Investigation Report ("PSR") on September 29, 2021. (PSR, Dkt. 237.) In the PSR, the USPO properly calculated a total offense level of 26 and a Criminal History Category of I, which results in a United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range of 63 to 78 months with a subsequent period of supervised release of 2 to 5 years. (PSR, ¶¶

66, 69.)  However, pursuant to 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii)(II), defendant faces a mandatory minimum term of imprisonment of five years and a maximum term of 40 years, along with a mandatory minimum term of four years of supervised release and up to a lifetime period of supervision.[1]  (PSR, ¶ 65.)  Accordingly, the USPO recommend defendant be sentenced to a below-Guidelines term of 60 months imprisonment, a four-year period of supervised release, and a $100 special assessment.  (Dkt. 236, "PSR Rec.", at p. 6.)

While mainly in agreement with the USPO recommendation, the government believes that defendant's conduct and sentence is adequately measured by the Guidelines.  Because defendant has failed to satisfy the necessary criteria to be eligible for the Safety Valve provision pursuant to 18 U.S.C. § 3553(f), defendant must be sentenced to at least the mandatory minimum of five years' imprisonment.  Accordingly, the government recommends a low-end Guidelines term of 63 months' imprisonment, four years of supervised release, and a $100 special assessment.

## II. STATEMENT OF FACTS

On April 30, 2019, defendant was traveling from London, England to Sydney, Australia with a connecting flight in Los Angeles.  (PSR, at ¶ 4.)  Defendant landed at the Los Angeles International Airport ("LAX") whereupon he collected and checked in a large yellow suitcase and a smaller blue suitcase.  (Id.; Exhibit A, Surveillance Still.) Transportation Security Administration ("TSA") x-ray machines detected an anomaly within the yellow suitcase.  (Exhibit B, X-Ray Photograph of Yellow Suitcase.)  Accordingly, the suitcase was

---

[1] The PSR erroneously states that defendant faces a mandatory minimum of five years of supervised release.  (PSR, ¶ 68.)

2

rerouted to the LAX Terminal 7 baggage room for further inspection. There, TSA Lead Transportation Security Officer Charles Moore and Officer John Huljev examined the yellow suitcase and removed its contents. Officer Moore was unable to find the object that set off the x-ray alert and determined that it was "artfully concealed." TSA Explosives Specialist James Becker arrived at the baggage room to assist with the inspection.

Specialist Becker examined the yellow suitcase's bottom panel and noticed evidence of tampering, including electric tape and strands of glue. Specialist Becker looked underneath the bottom panel and saw a flat, vacuum-sealed package hidden beneath the panel. Soon after, he determined the vacuum-sealed package was not an explosive. Eventually, the package was partially removed from underneath the panel. At that point, LAX Police Officer Romolo Valle, arrived at the baggage room and assisted in removing the package from the yellow suitcase. (Exhibit C, Photograph of Yellow Suitcase and Vacuum Sealed Package).

HSI Special Agent Jorge Marron arrived at the baggage room and determined the suitcase belonged to defendant. He then requested the retrieval of any additional luggage belonging to defendant. Shortly thereafter, a smaller blue suitcase belonging to defendant was transported to the baggage room. Agent Marron examined the blue suitcase and discovered similar signs of tampering, including electric tape, glue strands, and markings on screws, throughout the bottom panel. Agent Marron then looked underneath the blue suitcase's bottom panel and found another concealed vacuum-sealed package. After a bit of a struggle, Agent Marron removed the vacuum-sealed package and noticed it was smaller than the vacuum-sealed

3

package found in the yellow suitcase.  (Exhibit D, Photograph of Blue Suitcase and Vacuum Sealed Package).  Agent Marron also determined that both vacuum-sealed packages matched the dimensions of their respective suitcases.  Defendant was apprehended by CBP Officer Alfredo Cuevas in the hallway before the jet bridge as he was about to board his flight.  Officer Cuevas did not recover any paraphernalia that would be used to ingest narcotics from defendant, nor was any recovered from defendant's belongings.

The vacuum-sealed package found in the yellow suitcase contained approximately 1,444 grams of cocaine.  (Exhibit E, United States Customs and Border Protection Laboratory Report LA20190671).  The package found in the blue suitcase contained approximately 807.4 grams of cocaine.  (Id.)  In total, defendant concealed and attempted to transport 2,251.4 grams of cocaine to Sydney, Australia.

**III. PSR GUIDELINES CALCULATIONS**

On September 29, 2021, the USPO filed its PSR.  The USPO calculated defendant's adjusted offense level as 26, pursuant to the following calculation:

 Base Offense Level:         26       U.S.S.G. § 2D1.1(c)(7)

(See PSR, at ¶¶ 12-23.)  The government does not object to the USPO's calculation of defendant's total offense level.  Nor does the government object to the USPO's calculation of defendant's criminal history score and category, which it determined, respectively, to be 0 and I.  (PSR, at ¶ 28.)

4

**IV. CORRECTIONS TO PRESENTENCE REPORT**

The government has identified one error in the PSR that should be corrected.[2] Paragraph 68 states "The Court must impose a term of supervised release of at least five years and may impose up to a life term." Pursuant to defendant's underlying conviction under 18 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii), defendant faces a minimum of four years of supervised release, not five.

**V. ANALYSIS OF THE SECTION 3553(a) FACTORS AND THE GOVERNMENT'S SENTENCING POSITION**

For the reasons set forth below, the government respectfully recommends the following sentence: (1) a term of imprisonment of 63 months; (2) a four-year period of supervised release with the terms recommended by USPO; and (3) a $100 special assessment.

The government believes such a sentence appropriately balances the history and characteristics of the defendant with the need to reflect the seriousness of the offense, to protect the public, to deter defendant from further criminal acts, and to promote respect for the law.

**A. Nature and Circumstances of the Offense**

The nature and circumstances of defendant's offense support a sentence of 63 months' imprisonment. See 18 U.S.C. § 3553(a)(1). Defendant transported and attempted to distribute nearly five pounds of concealed cocaine across international borders. (PSR, at ¶ 4.) Each vacuum-sealed package of cocaine was carefully concealed in cellophane packaging and underneath piles of clothes, personal belongings, and plastic panels specifically to avoid detection by

---

[2] On October 13, 2021, defendant submitted his objections to the PSR via email to USPO. As of time of filing, defendant has not filed his objections within the docket.

5

airport security.  By his acts, defendant attempted to effectuate an elaborate, organized effort to transport and distribute a significant quantity of cocaine over three continents.  The government thus believes that the low-end 63-month term of imprisonment properly reflects the seriousness of his offense.

**B.    History and Characteristics of the Defendant**

Defendant, a licensed, practicing attorney who has dabbled in criminal law in his native Brazil, should know better.  Defendant has been an attorney for at least 10 years and has worked for the past decade as a solo practitioner.  (PSR, at ¶¶ 39, 49-50, 54.)  Be it the United States or Brazil, attorneys have a duty of ethics--a duty defendant has dramatically breached by engaging in a calculated plan to transport and distribute dangerous narcotics overseas.

Despite defendant's upbringing and lack of criminal history, defendant's conduct is concerning.  Even with having a loving family, a good education, never lacking food, shelter, or any necessity, and owning his own firm, he elected to participate in a calculated plan to hide, smuggle, and distribute cocaine for a potential profit in another country.  (PSR, at ¶ 33-37.)  While the government acknowledges defendant's work at the Metropolitan Detention Center, his continued rehabilitation through education, and his remorse, the fact remains that defendant must be sentenced to at least a mandatory minimum period of 60 months.  This sentence, regardless of these developments and the mandatory nature of the term of imprisonment, appropriately addresses the defendant's breach of trust in both his profession and in society.  Accordingly, a low-end Guidelines 63-month term of imprisonment followed by a four-year period of supervised release is justly warranted.

### C. Need to Reflect Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Afford Deterrence, and Protect the Public

The sentence must satisfy defendant's need for punishment or rehabilitation, as well as society's need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect the public. There is a strong need for the sentence to specifically deter defendant from committing future crimes and generally deter others from committing similar crimes. See 18 U.S.C. § 3553(a)(2)(B).

Defendant engaged in a serious, calculated offense that involved planning and premeditation. Moreover, defendant, despite his background, elected to transport a considerable amount of cocaine through the use of vacuum-sealed packages, suitcases specifically designed to conceal the packages, and air travel. The severity of defendant's conduct is adequately addressed by the Guidelines. Given defendant's conduct, as well as his lack of criminal history, a 63-month period of imprisonment is just and would adequately protect the public and deter defendant from committing similar offenses.

### D. Defendant Does Not Qualify for Safety Valve Reduction or a Sentence Below the Mandatory Minimum

To be eligible for a sentence below the mandatory minimum, defendant must satisfy the five criteria outlined in 18 U.S.C. § 3553(f). Defendant bears the burden of establishing by a preponderance of the evidence that he has met each of the five requirements set forth in 18 U.S.C. § 3553(f)(1)-(5). United States v. Mejia-Pimental, 477 F.3d 1100, 1104 (9th Cir. 2007); United States v. Ajugwo, 82 F.3d 925, 929 (9th Cir. 1996). He has failed to do so.

Specifically, defendant has not satisfied the fifth safety valve requirement because he refused to truthfully provide to the government all information and evidence concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan.[3] 18 U.S.C. § 3553(f)(5). Indeed, defendant has neither proffered with the government nor provided any sort of any information or evidence, let alone the information or evidence necessary to satisfy the safety valve criteria.[4] Defendant has thus not met his burden of satisfying all five safety vale requirements. See 18 U.S.C. § 3553(f)(1)-(5); U.S.S.G. § 5C1.2(a). The Court must therefore impose, at least, the mandatory minimum sentence.

If, prior to sentencing, defendant proffers with the government and satisfies 18 U.S.C. § 3553(f)(5), the government will file a supplemental notice.

**VI. CONDITIONS OF SUPERVISED RELEASE SHOULD BE IMPOSED FOR THREE YEARS**

The USPO recommends the mandated four years of supervised release "to help achieve the goals of sentencing" in the event defendant remains in or returns to the United States following his term of imprisonment. (PSR Rec., at p. 6.) Given the seriousness of the instant offense and defendant's attempt to remain in the United States, the government agrees that a four-year period of supervised

---

[3] The government concedes, as the PSR correctly states, that defendant satisfies the first four criteria. (See PSR, at ¶¶ 13-14.)

[4] The government reached out to advisory counsel, Gerald C. Salseda, on July 9, 2021 and requested information about defendant's interest in proffering pursuant to 18 U.S.C. § 3553(f)(5). Advisory counsel responded that defendant was "considering" proffering. The government has not been notified of any change of position as of time of filing.

8

release is appropriate and further agrees with the conditions of supervised release listed in the USPO's Recommendation Letter.  (Id.)

**VII. CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court impose the following sentence: (1) a term of imprisonment of 63 months the low-end of the Guidelines; (2) four years of supervised release with the terms recommended by the USPO, and (3) a $100 special assessment.