CARLOS GROSSI
Reg. No. 78059-112
MDC Los Angeles
Metropolitan Detention Center
P.O. Box 1500
Los Angeles, CA 90053

PRO SE

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,       )<br>                                 )<br>            Plaintiff,           )<br>                                 )<br>      v.                         )<br>                                 )<br>CARLOS GROSSI,                   )<br>                                 )<br>            Defendant.           )<br>_____  ) | Case No.: CR-19-302-FMO<br><br>**MR. GROSSI'S POSITION RE: SENTENCING; EXHIBITS A-L**<br><br>Hearing Date: November 4, 2021<br>Time: 2:30 p.m.<br>Department: 6D |

Defendant Carlos Grossi (herein "Mr. Grossi"), PRO SE, hereby submits his position regarding sentencing. Mr. Grossi's position is based on the attached sentencing position, exhibits and any argument that may be presented at sentencing.

DATED: October 22, 2021                    Respectfully submitted,

                                          _____/s/_____
                                          CARLOS GROSSI, PRO SE

---

DEFENDANT'S SENTENCING POSITION

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On July 2, 2021, Mr. Grossi was found guilty by a jury of a single charge indictment with possession of cocaine with intent to distribute in violation of Section 841(a)(1) of Title 21 of U.S.C.

Mr. Grossi has been in continuous Federal custody since his arrest on April 30, 2019 (30 straight months including during the harsher conditions of confinement due to the COVID-19 pandemic, which had put the defendant in a 24 hour lockdown inside of his cell from February 2020 to September 2020 at MDC-LA), showers only allowed 3 times per week and restriction in his communications with Mr. Grossi's family in Brazil and his counsel at the time (access to phones or e-mail only 4 times per week for 5 minutes per day)). Also, the government, in the middle of the COVID-19 pandemic and with the knowledge that Mr. Grossi was not vaccinated at the time, transferred the defendant between 3 different facilities (MDC-LA; to San Bernardino West Valley Detention Center; to San Bernardino Central Detention Center; and back to MDC-LA).

The U.S. Probation Office (USPO) is recommending a sentence of 60 months based on an adjusted offense level of 26 and a criminal history category of I. Mr. Grossi is requesting a sentence of time served, no supervised release and no applicable fine and prosecution costs, or, eventually if the main request here will not be granted, a sentence of time served, 2 years of supervised release (exempt Mr. Grossi from the collection of DNA and the submission of drug tests) and no applicable fine and prosecution costs all based on the forward points and authorities.

## II. FACTUAL OBJECTIONS TO THE PRESENTENCE REPORT AND DISCLOSURE LETTER

### A. MEMORANDUM LIST

Mr. Grossi sent a list of its factual objections to the probation officer, to the US attorneys and had filed it (see Memorandum - DKT 243).

### B. IMMENSURABLE BASE OFFENSE LEVEL RANGE

The presentence report based the adjusted offense level of 26 due the Federal Controlled substance type (supposedly cocaine) and the substance total weight (supposedly 2.251 Kg).

The evidence produced by the government has discrepancies about the substance as itself, since on January 8, 2021, almost 2 years after the seized act of the substance as evidence, the Laboratory Report (EXHIBIT A - USAO_2_709) remarks that "The unknown white powders were not processed", as well, on February 22, 2021, the Report of Investigation (EXHIBIT B - USAO_2_707) remarks the same "The unknown white powders were not processed". The dispatch call (EXHIBIT C - USAO_074, Audio File of Dispatch Call, attached to DKT. 182 as Exhibit 5 (not attached to this Motion)), at 00min40sec, made able to listen to a woman laughing after a man said that the substance could be any kind of drugs and the same woman said that "Uh! That is intense" in a tone of joke. For last, the photographs of the substance (EXHIBIT D - USAO_2_247-248), on May 9, 2019, show some kind of substance as little crystals, not a "white powder" as stated on "Sample Report History" (EXHIBIT E - USAO_2_236).

The weight of the Federal Controlled substance on the evidences produced by the US has several discrepancies (9 different amounts in total - Indictment; see EXHIBITS F, G, H, I, J, K, L[1]), that went from "one pound" (lower than 500 grams) as stated by SA Torres at 34min34sec; 35min18sec; and 35min23sec, page 17 of 29, on the transcription from the audio (EXHIBIT I – USAO_40), to 2.7 Kg (EXHIBIT J – USAO_43). The "Section VIII: Report Office's Summary/Narrative" on EXHIBIT L (USAO_2_164)

---

[1] EXHIBIT F – USAO_03;
EXHIBIT G – USAO 8;
EXHIBIT H- USAO_30, USAO_39;
EXHIBIT I – USAO_40, Audio Recording of First Client Interview, attached to Dkt. 50 (not attached to this Motion);
EXHIBIT J – USAO_43;
EXHIBIT K – USAO_45;
EXHIBIT L – USAO_2_164;

DEFENDANT'S SENTENCING POSITION
2

states that, on April 30, 2019, the substance amount was "2 pounds" and in the bottom of the same document said "Previous editions of this form are obsolete".

"556 US 646, 650, 129 S. Ct. 1886, 173 L. Ed. 2d. 853 (2009). Applying that presumption, I would hold that when the government seeks enhanced penalties under 841(b)(1)(A) or (b)(1)(B) - specifically, the mandatory minimums and increased statutory maximums that do not exist for Schedule I or II drug violations charged under 841 (b)(1)(C) - it must prove the defendant 'knowing or intentionally' distributed the actual controlled substance and quantity charged under 841(b)(1)(A) or (b)(1)(B)".

For the foregoing reasons, there is no rational foundation to calculate the base offense level on the guidelines, which makes the base offense level 26 to be a speculation and an illegality, and for that result in a factual Mr. Grossi's objection, once any sentence derived from the offense base level 26 will be illegal

### III. MR. GROSSI HISTORY AND CIRCUMSTANCES

#### A. DEFENDANT PERSONAL AND UNDER US CUSTODY HISTORY

The defendant is a Brazilian citizen, 39 years old, with no criminal history. Mr. Grossi is a lawyer for more than 10 years in Brazil and a grandson of the Brazilian judge Honorable Jose Grossi. The defendant is the only son from his mother that has almost 80 years old, she has the diagnostic of depression and other medical issues, and Mr. Grossi before the arrest by the US government was the responsible person to help his mother on her day life.

Under the custody of the US Mr. Grossi had contact with some occurrences that will affect him and his family for the rest of their life, since (1) Mr. Grossi got no communication with his mother in Brazil on his first month under US custody because the defendant's money (under Mr. Grossi possession when he was arrested) disappeared and never got transferred to his inmate account at MDC-LA (all communication at MDC-LA was paid at the time, phone or e-mail, and the MDC-LA staff refused to call the Brazilian Embassy to Mr. Grossi for several times), which made impossible for the first time in Mr. Grossi's life to talk with his mother on the Brazilian mothers day and to say to

his family that he was alive; (2) in Mr. Grossi first year one inmate that used to be incarcerated in front of his cell committed suicide by overdose using a Federal Controlled Substance inside of a Federal building; (3) another inmate in the second year of Mr. Grossi under US custody got stab more than 10 times in the same floor of his inside of a Federal building; (4) all property bought by the defendant in his 2 first years under the government custody at MDC-LA with money received as payment for his working at the MDC-LA's kitchen plus with payment for his drawings to inmates (almost 600 hundred dollars) disappeared when Mr. Grossi got transferred in the middle of the pandemic from MDC-LA to San Bernardino West Valley Detention Center (August, 2020); (5) The defendant was unable to contact his mother for almost one month when he got transferred in the middle of the pandemic from MDC-LA to San Bernardino West Valley Detention Center, on 2020, due no funds in Mr. Grossi's inmate new account at San Bernardino County and due defendant's quarantine; (6) Under US custody Mr. Grossi had faced the lost of some family relatives and close friends in Brazil that were expecting the freedom of the defendant before their deaths; (7)  The defendant in the 30 months under government's custody had a good behavior inside of the 3 detentions facilities where he had been; (8) Mr. Grossi has breathing allergies due the air conditioned from the 3 facilities were he has been under US custody; he has for the first time in his life sciatic issues due the transportation from San Bernardino Central Detention Center to the Court room on 2021, when Mr. Grossi was wearing shackles on his legs and felt a chronic pain on his back when he was walking that day; and Mr. Grossi since 2019 needs to have a root canal, which never been provided under US custody and are resulting in infections and could result in mouth cancer if the root canal will be not done.

   **B.**   **NATURE AND CIRCUMSTANCES OF THE OFFENSE**

  Mr. Grossi had never been in the US, he was traveling outside of Brazil for the first time in his life when he was stopped in Los Angeles International Airport (herein "LAX") while making a connecting flight from London to Australia. It was alleged that cocaine supposedly was found on packages planted inside of the inner liners of his

luggage at LAX. The substance is under the US possession since the defendant arrested day, April 30, 2019, and no victim was possible to exist due the alleged offense, since no distribution of the substance was made.

### C. SENTENCING GUIDELINES

The advisory sentencing guidelines found by the probation office are as follows:

Base offense level:                     26
Specific offense characteristics:       0
Role in the offense:                    0
Victim adjustment:                      0
Obstruction of justice:                 0

Adjusted offense level: 26

Multiple count adjustment: N/A
Career offender/crim. livelihood/armed career criminal/ repeat sex offender N/A
Acceptance of responsibility N/A

**Total offense level 26**
**Criminal history category I**

Sentencing options:
Guideline Sentence 63 to 78 months
Supervised Release 2 to 5 years
Fine USD $25,000.00 to U$ 5,000,000.00

The USPO is recommending a sentence of 60 months (the mandatory minimum).

### D. ADJUSTMENTS AND OBJECTIONS

#### 1. Safety Valve Applicable Variance

Mr. Grossi meets all the criteria enumerated in USSG paragraph 5C1.2, commonly referred to as "safety valve". The fifth criterion that gives the defendant the right of a two-level reduction on the offense level pursuant to USSG paragraph 2D1.1(b)(18) was fulfilled, since common sense dictates that the defendant and his luggage came from one of the biggest international airports in the world, Heathrow in London England, to the Los Angeles International Airport without setting off any alarmed item alerts in the x-ray machines and the defendant, in his work as PRO SE, analyzed all the evidence produced

by the government and made a logical construction of discrepancies in dates, time and weight of the cocaine supposedly found on defendant's luggage. The defense concluded after analysis that perjury was committed by five officers: (1) Manuel Herrera; (2) Charles Moore; (3) Rodrick Wilton; (4) Romolo Valle; and (5) Alfredo Cuevas. Pretrial motions were prepared and filed. The government did not contested the perjury on pretrial or trial. The present case now is under the section of Public Corruption and Civil Rights (see opposition filed by the government against Mr. Grossi ex parte application regarding transportation to immigration appointment - DKT 230, filed 09/10/21) due to the assistance on the investigations that was an imminent consequence of Mr. Grossi's work as PRO SE. Mr. Grossi truthfully provided all information that he discovered after analyzing the evidences produced by the government as part of his work in PRO SE status defending against a single-count offense charged. He had sent one e-mail to the US attorneys, through his advisory counsel (Mr. Salseda), to provide supplementary assistance on the investigation in the form of the following:

> "FROM S,G
> TO:78059112
> SUBJECT: RE: To the US attorneys
>
> Will do. -j
>
> CARLOS A VIANA-GROSSI on 09/26/2021 1:20:54 PM wrote:
>
> Mr. Salseda,
>
> I am requesting you to send this in the same way that is here to the US attorneys from my case as a letter and give me a proof that they received (like a receipt):
>
> Dear US Attorneys,
>
> As an assistance to the investigations I want to report that in the video produced by the government (Exhibit 19), it is possible to see the suspicious behavior of one woman with a cellphone in one hand and a black briefcase in another. In the video, this woman was following me in every movement, from the beginning to the end of the video produced by the US, and she was simultaneously typing messages on her cellphone. I suspect that this woman is an United Airlines worker, because of her uniform, and probably her name is Lisa Fiore (United Airlines Supervisor), person on Rodrick Wilton declaration (see DKT 151, filed 06/04/21, page 16 of 17 -

DEFENDANT'S MOTION TO DISMISS DUE TWO SUBJECTS OF INTEREST).

Respectfully,

Carlos Grossi
PRO SE"

**2.** ***Booker v. United States* Applicable Variance**

Defendant's personal history and characteristics, as well the unique circumstances of this case give the right to Mr. Grossi of a two-level downward variance under *Booker v. United States*, 543 US 220 (2005).

**3.** **Minimal Role Applicable Variance -4**

Mr. Grossi has a minimal role in the offense, which gives him the right of a four-level downward variance.

**4.** **COVID-19 Pandemic Applicable Variance -2**

The defendant is under US custody from April 30, 2019, until now. Inside of the temporal lapse of 30 months under government's custody the COVID-19 pandemic started spreading through the world. For these reasons Mr. Grossi has the right of two-level downward due the pandemic variance.

**5.** **No Limitation of Low-End Level 17**

All downwards level variances that Mr. Grossi has right after adjusted on the base offense level 26 result in the level 16. The USSG about the safety valve states "(b) In the case of a defendant (1) who meets the criteria set forth in subsection (a); and (2) for whom the statutorily required minimum sentence is at least five years, the offense level applicable from chapters two (offense conduct) and Three (adjustments) shall be no less than 17". This limitation should not apply in the present case, once the departure and or variances COVID-19 and Booker factors are not on the chapter 2 or 3 adjustments.

**6.** **Objection to Mandatory Minimum of Imprisonment**

The defendant meets all the criteria enumerated in USSG paragraph 5C1.2 known as safety valve. For this reason Mr. Grossi is exempt from any otherwise applicable statutory minimum sentence of imprisonment.

Eventually, if the safety valve will be denied to Mr. Grossi, the mandatory minimum of imprisonment should be invalidated due the unique circumstances of this case, as well defendant's personal history and characteristics, making the sentence sufficient, but no greater than necessary (US v Booker, 543 US 220 (2005); Gall v US, 128 Ct. 586, 597 (2007); Rita v US 127 S. Ct. 2456, 2465 (2007); Kimbrough v US, 128 S. Ct. 558, 575 (2007); US v Carty, 520 F.3d 984, 991 (9th Cir. 2008)).

### 7. Objection to Supervised Release

Mr. Grossi is exempt from any otherwise applicable statutory minimum term of supervised release (USSG paragraph 5C1.2 (b)(9)), once he meets the criteria enumerated in USSG paragraph 5C1.2 known as safety valve. The unique circumstances of this case, as well the defendant personal history and characteristics (no criminal history, no abuse of drugs or alcohol, he is a lawyer for more than 10 years and there is no violence or victim on the offense) corroborate that Mr. Grossi is not a danger for the public or will committed further crimes. The government costs for supervised release is a considerable amount for the taxes paid by American citizens and there is no need in this case. For these reasons, any supervised released is unnecessary on the present case and will be greater than necessary if it imposed.

Eventually, if the safety valve will not be granted to the defendant and the Booker factors are not enough to invalidated the statutory minimum term of supervised released, the guideline provision list a range for a term of supervised released of 2 years to 5 years (USSG paragraph 5D1.2 (a)(1)), once the offense from this case is a Class B Felony. A supervised release of 2 years for the present case is sufficient, otherwise more than this will be greater than necessary.

Mr. Grossi should be exempted from the DNA collection as supervised release condition, once he is a Brazilian citizen and the Brazilian Federal Constitution states that no citizen should produce evidence against himself, which include genetic material,

otherwise will result in a international conflict between the Federal Constitutions from US and Brazil.

The drug tests as a condition on supervised release should not be applied on this case, since Mr. Grossi has no criminal history and no drug abuse history, which concluded that the defendant poses a low risk for future substance abuse

### 8. Objection to Fine and Prosecution Costs

No fine or prosecution costs should be imposed on Mr. Grossi, once he was declared legally indigent, has the status PRO SE, acting in forma pauperis, and the US Constitution on the Amendment 8 states that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted".

### 9. Objection to Denial of Federal Benefits

Mr. Grossi is a Brazilian citizen and never had been in the US before the day of his arrest, August 30, 2019. the defendant has a US visa as tourist valid until 2025 that never been used, as well Mr. Grossi has an asylum application pending. Due these facts plus the unique circumstances of this case, the defendant personal history and characteristics, no Federal benefits or eligibility for it should be denied.

### E. DEFENSE RECOMMENDED ADVISORY GUIDELINES RANGE

#### 1. Guidelines Range with Safety Valve

Base offense level:                                           26
Specific offense characteristics (safety valve):   -2
Role in the offense:                                          -4
*Booker v US* factors:                                       -2
COVID-19 pandemic variance:                          -2
Victim adjustment:                                              0
Obstruction of justice:                                         0

Adjusted offense level: 16

Multiple count adjustment: N/A
Career offender/crim. livehood/armed career criminal / repeat sex offender: N/A
Acceptance of responsibility: N/A

**Total offense level: 16**

**Criminal history category I**

Sentencing Options:
Guideline Sentence: 21 to 27 months
Supervised Release: No statutory minimum (USSG paragraph 5C1.2(b)(9))
Fine and Prosecution Costs: Not applicable

      Mr. Grossi is already 30 months under US custody (from April 30, 2019 until now), which is greater than the high end of 27 months on the guideline sentence options. The defense asks for time served, since all the goals of sentencing were achieved.

### 2. Guidelines Without Safety Valve

| | |
|---|---|
| Base offense level: | 26 |
| Specific offense characteristics: | 0 |
| Role in the offense: | -4 |
| *Booker v. US* factors: | -2 |
| COVID-19 pandemic variance: | -2 |
| Victim adjustment: | 0 |
| Obstruction of justice: | 0 |

Adjusted offense level: 18

Multiple count adjustment N/A
Career offender/crim. livehood/armed career criminal/ repeat sex offender N/A
Acceptance of responsibility N/A

**Total offense level 18**
**Criminal history category I**

Sentencing Options:
Guideline Sentence: 27 to 33 months
Supervised Release: No statutory minimum (Booker factors)
Fine and Prosecution Costs: Not apply

      Mr. Grossi is already 30 months under US custody (from April 30, 2019 until now), which is almost the high end of 33 months on the guideline sentence options. The defense asks for time served to achieve all the goals of sentencing.

## IV. APPROPRIATE SENTENCE

### A. APPLICABLE LAW WITH SAFETY VALVE

The offense base level was calculated as 26, the criminal history category I and the offense is a Class B felony. Mr. Grossi has the right of (a) -2 variance pursuant to USSG paragraph 2D1.1(b)(19), 5C1.2, known as safety valve; (b) -4 variance under the minimal role of the defendant in the offense; (c) -2 variance under *Booker v. US*, 543 US 220 (2005), based upon defendant's personal history and characteristics, the factor listed in 18 USC paragraph 3553(a)(1)-(7), as well the unique circumstances of this case; and (d) -2 variance under COVID-19 pandemic. The total level after adjustments is equal to 16 (guideline sentence 21 to 27 months). Mr. Grossi is exempt from any otherwise applicable statutory minimum sentence of imprisonment and statutory minimum term of supervised release (USSG paragraph 5C1.2(b)(9)).

### B. APPLICABLE LAW WITH INDIVIDUALIZED ASSESSMENT

The offense level was calculated as 26, the criminal history category I and the offense is Class B felony. Mr. Grossi has the right of (a) -4 variance under the minimal role of the defendant in the offense; (b) -2 variance under *Booker v. US*, 543 US 220 (2005), based upon defendant's personal history and characteristics, the factor listed in 18 USC paragraph 3553(a)(1)-(7), as well the unique circumstances of this case; and (c) -2 variance under COVID-19 pandemic. The total level after adjustments is equal to 18 (guideline sentence 27 to 33 months). The statutory supervised release for a Class B felony is 2 to 5 years (USSG paragraph 5D1.2 (a)(1)).

The statutory minimum sentence of imprisonment and supervised release should not apply to Mr. Grossi due *United States v. Booker*, 543 US 220 (2005), which invalidated the mandatory guideline system. It held that the Sentencing Reform Act "requires judges to take account of the guidelines together with other sentencing goals." 543 US at 259. Since then, the Supreme Court has made the meaning of the phrase "together with" progressively clearer: guideline range is not a set-in-stone given that must be moved by one side, but merely the starting point for an evenhanded and

"individualized assessment" of each case. See *Gall v. US*, 128 S. Ct. 586, 597 (2007). District courts are not presume that the guideline range is the applicable sentence, *Rita v. US*, 127 S.Ct. 2456, 2465 (2007); there is no requirement of a showing of some extraordinary circumstances before a non-guideline sentence imposed, *Gall*, 128 S.Ct. at 595; and non-guidelines sentence meets the goals of 18 USC paragraph 355(a) if it is "sufficient, but not greater than necessary" to achieve these purposes. *Kimbrough v. US*, 128 S.Ct. 558, 575 (2007).

The guidelines are no longer the only, or even the primary, consideration in fashioning a sentence in particular case - they are purely advisory. *US v. Booker*, 543 US 220, 260-61 (2005); 18 USC paragraph 3553(a); 18 USC paragraph 3583(e). Rather, the district court is governed by the "overarching statutory charge" to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. *US v. Carty*, 520 F.3d. 984, 991 (9th Cir. 2008)(en banc)(citing 18 USC paragraph 3553(a) and (a)(2)).

## V. JUST PUNISHMENT AND DETERRENCE

Mr. Grossi is a Brazilian citizen with no criminal history, he is a lawyer for more than 10 years, the defendant was traveling outside of Brazil for the first time in his life and got incarcerated in a foreign country for 30 months during the pandemic and far from his family and any person that he knew in his life. Mr. Grossi was prived of his liberty in 3 facilities where occurred (1) suicidal of one inmate by overdose of a Federal Controlled substance inside of a Federal building (July, 2019); (2) other inmate got stab more than 10 times in the same flour where the defendant was incarcerated (2019); (3) one inmate got murdered by his cellmate when Mr. Grossi and all the inmates were in a total lockdown of 24 hours due the pandemic for 7 months and only 3 showers per week allowed (June, 2020). Mr. Grossi has no substance abuse issues and the offense has no violence or victim. All here, plus others facts that resulted in unusual punishment

1 inflicted on the defendant by the US government are punishments for more than one life
2 time.

### VI. CONCLUSION

For the foregoing reasons, the defense respectfully requests that this Honorable court impose the following sentence: (1) time served, once Mr. Grossi is under US custody for 30 months; (2) no supervised release, due defendant's characteristics and history, as well the unique circumstances of this case. Eventually, if supervised release will be impose, that a term of 2 years or less should be impose with the exempt of Mr. Grossi from (a) collection of DNA (to avoid international conflict between the Federal Constitutions from United States of America and Brazil), and (b) the submission of drug tests (due Mr. Grossi poses a low risk of future substances abuse); (3) no applicable fine or prosecution costs impose on the defendant; and (4) no denial of Federal benefits or eligibility for them.

DATED: October 22, 2021              Respectfully submitted,

                                     _____/s/_____
                                     CARLOS GROSSI, PRO SE